IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION



FILED
MAY 31 2003
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| HARRY W. GUTIERREZ, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | 01-C-2469-W |
| ANTHONY J. PRINCIPI, Secretary of ) | |
| Veterans Affairs, ) | |
| ) | |
| Defendant. ) | |

ENTERED
JUN 1 2003

### FINDINGS OF FACT AND CONCLUSIONS OF LAW ON DEFENDANT'S RENEWED SUMMARY JUDGMENT MOTION

Plaintiff Harry Gutierrez ("Gutierrez"), is a former staff psychiatrist of the Department of Veteran Affairs Medical Center in Tuscaloosa, Alabama ("TVAMC"). In this lawsuit, he claims that the Veterans Administration discriminated against and discharged him because of his disability, in violation of the Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), and the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* ("Rehab Act").

Defendant Secretary of Veterans Affairs Anthony J. Principi has renewed his motion for summary judgment.

On consideration of the voluminous documents on file, the briefs, and the arguments of counsel, the Court finds that based on the undisputed facts, the Defendant is entitled to judgment as a matter of law. The motion is therefore due to be granted.

1



## A. Statement of Undisputed Facts

1. On March 31, 1999, Plaintiff was hired by the TVAMC as a staff psychiatrist. He had a two-year probationary appointment.

2. When Plaintiff commenced his employment with the TVAMC, he had already been diagnosed with "major depression, melancholy type." Immediately prior to this employment, he had experienced an episode of severe depression which had completely disabled him for a period of eight to nine months.[1] Plaintiff's treating physician thereafter opined that Plaintiff had improved to the point that he could hold a job.

3. Plaintiff disclosed his depression problem to TVAMC during his pre-employment physical examination.

4. Shortly after coming to work for TVAMC, Plaintiff began experiencing depression problems again. These problems resulted in his arriving late for work on several occasions during his first six months of work.

5. Plaintiff's initial supervisor at TVAMC was Dr. James Evans. Dr. Evans did not make an issue of Plaintiff's tardiness. Dr. Evans led Plaintiff to believe that the staff

---

[1] According to the Diagnostic and Statistical Manual of Mental Disorders, 4th Edition, (DSM-IV), a Major Depressive Episode is characterized by changes in appetite or weight; sleep and psychomotor activities; decreased energy; feelings of worthlessness or guilt; difficulty thinking, concentrating or making decisions; and recurrent thoughts of death or suicidal ideation, plans or attempts. It may also be "accompanied by clinically significant distress or impairment in social, occupational or other areas of functioning." *DSM-IV*, at 320 (1994). To be diagnosed with Major Depressive Disorder with Melancholic Features, the patient must exhibit either a "loss of pleasure in all, or almost all, activities" or "lack of reactivity to usually pleasurable stimuli." *Id.* at 384.

2

physicians were allowed to work flexible hours.

6. When Dr. Evans left the employment of TVAMC five months after Plaintiff's arrival, the Director of Inpatient Services, Rosella Burchfield, became his supervisor. By occupation, Burchfield is a family nurse practitioner. Shortly after Burchfield became Plaintiff's supervisor, she informed him that TVAMC would enforce its policy that day-shift physicians would arrive at work by 8 A.M. and leave at 4:30 P.M., with a lunch break of thirty (30) minutes.

7. After Burchfield notified Plaintiff that the policy would be enforced, the Business Office Manager of TVAMC, Kevin Fandel, began monitoring Plaintiff's arrival and departure times. Fandel's office faced the parking lot where Plaintiff and other department employees parked. Fandel personally observed Plaintiff "consistently coming into work late." He noted that on occasion, Plaintiff would take lunch breaks which extended into two or three hours; and sometimes, he would not return to work at all.

8. Several physicians complained to Fandel that they were having to take on Plaintiff's patients when Plaintiff was not available due to tardiness or absences. The Nursing staff complained that Plaintiff's frequent unavailability was affecting their ability to provide care for their patients. Patients complained that when Plaintiff failed to show up for scheduled appointments, they were required to see other physicians.

9. Between August, 1999 and February 7, 2000, Plaintiff was absent from work a total of twenty-one (21) days. Plaintiff was often late for work. He sometimes left at noon and did not return for long periods of time.

10. Beginning in the fall of 1999, Burchfield counseled Plaintiff on several occasions concerning his tardiness and absenteeism. She also imposed the additional requirement that Plaintiff "sign in and out" each day with a secretary, including his lunch breaks.

11. Plaintiff's depression problems were exacerbated by the monitoring of his arrivals at work, the counseling sessions, and the "sign in" requirements. He experienced extreme panic attacks, his diabetic condition worsened to the point where he required insulin to stabilize his condition, and his self-esteem decreased. He was substantially limited in his ability to function, sleep, concentrate, communicate, and arrive at work at the scheduled time. Ultimately, he became unable to work, so he did not come to work at all.

12. Plaintiff requested an accommodation for his disability. When told by Burchfield that he would be required to sign in with her secretary, Plaintiff requested another supervisor. He maintains that he also requested "a change in supervisory method" as reflected by his November 2, 1999, letter to Burchfield:

> During the past few days I have been afflicted by illness that, to my understanding and conviction, resulted in no small measure from the stress of being disciplined in the way you have chosen over the past couple of weeks. Therefore, I am – with all due respect – asking for some time during which I need not abide by the requirements of your decision for me to report to someone else every time I arrive or leave the hospital.

Plaintiff's Response to Defendant's Renewed Motion For Summary Judgment, p.14.

13. Burchfield offered Plaintiff the option of changing his work schedule to 8:30 A.M. – 5:00 P.M. Plaintiff declined the offer.

14. In a letter dated April 13, 2000, TVAMC made Plaintiff aware of the possibility

4

of part-time employment. Plaintiff declined the offer as being "too late."

15. In January, 2000, Burchfield met with Plaintiff for a probationary review. At that time, she advised him that because of his attendance and tardiness problems, as well as inappropriate entries in the medical charts of certain patients, she was recommending that his employment with TVAMC be terminated.

16. On February 22, 2000, Plaintiff was advised by TVAMC that he would soon exhaust his annual and sick leave. He was placed on non-pay medical leave on February 25, 2000. Plaintiff did not work for TVAMC at any time between that date and the date of his termination.

17. Plaintiff was terminated by TVAMC on May 22, 2001. He involuntarily resigned on that date in order to maintain his insurance coverage for himself and his wife.

18. Had Plaintiff not resigned, he would have been discharged on the recommendation of Burchfield made some fifteen months earlier.

**B. Conclusions of Law**

1. The ADA does not apply to the United States or its agencies. *See* 42 U.S.C. § 12111(5)(B). However, Plaintiff's claims are covered by the Rehab Act, and the standards for determining liability under the Rehab Act are the same as the ADA standards. *Cash v. Smith*, 231 F.3d 1301 (11th Cir. 2000); *Sutton v. Lader*, 185 F.3d 1203, 1208 n.5 (11th Cir. 1999).

2. Plaintiff exhausted his administrative remedies.

3. Plaintiff has a disability. *Toyota Mfg., Ky. v. Williams*, 534 U.S. 184, 193 (2002); *Pritchard v. Southern Company Services*, 92 F.3d 1130 (11th Cir.1996).

4. Plaintiff is not an "otherwise qualified" individual because of his inability to timely show up for work, which prevents him from performing some of the essential functions of his job. *See Earl v. Mervyns, Inc.*, 207 F.3d 1361 (11th Cir. 2000).

5. Plaintiff has failed to show the existence of a reasonable accommodation.

6. Assuming *arguendo* the existence of a reasonable accommodation, Plaintiff rejected Defendant's offer(s) of reasonable accommodations.

7. The accommodations suggested by Plaintiff are unreasonable.

The Defendant is entitled to judgment as a matter of law. It will be entered by separate order.

Done this ____31st____ day of May, 2003.

_____
Chief United States District Judge
U.W. Clemon